UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

JESSICA LYNN PFEIFFER,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.

___

1:18-CV-00872-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16).

Plaintiff Jessica Lynn Pfeiffer ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 10) is granted, defendant's motion (Dkt. No. 14) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff filed an application for DIB on September 3, 2014 alleging disability since November 21, 2013 due to panic disorder with agoraphobia, generalized anxiety disorder, social phobia, attention-deficit/hyperactivity disorder, and major depressive disorder.

---

[1] The Clerk of Court is directed to amend the caption accordingly.

(*See* Tr. 10, 291).[2] Plaintiff's disability benefits application was initially denied on October 31, 2014. (Tr. 10, 199-202).[3] Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Bryce Baird on January 26, 2017. (Tr. 10, 140, 230). ALJ Baird heard testimony from plaintiff, who was represented by counsel, and Mark Cheairs, an impartial vocational expert, at that time. (Tr. 140-167.) On June 26, 2017, ALJ Baird issued a decision that plaintiff was not disabled under the Act. (Tr. 26-27). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 33-34). Plaintiff's request for review of the decision was denied by the Appeals Council on July 18, 2017. (Tr. 1-6). The ALJ's June 26, 2017 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on August 7, 1979, plaintiff was thirty-four years old at the time of the alleged onset date and thirty-seven years old at the time of the hearing. (Tr. 20, 183). She has at least a high school education and has previously worked as a receptionist, photo counter clerk, and retail manager. (Tr. 168).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. § 405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[2] References to "Tr." are to the administrative record in this case.
[3] The record shows Plaintiff has filed two prior Title II applications. The first was filed on October 13, 2012 and denied on December 24, 2012. The most recent application was filed on June 24, 2013 and denied on October 11, 2013, prior to the alleged disability onset date in this proceeding. (Tr. 10, 184). The ALJ determined that there are no grounds for reopening and the prior unfavorable determinations are final and binding. (Tr. 10).

2

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* § 423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

4

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* § 404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* § 404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* § 404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work,

then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* § 404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2018. (Tr. 12). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 21, 2013. (*Id.*) At step two, the ALJ found that plaintiff has severe impairments consisting of (1) a depressive disorder, (2) an anxiety disorder, (3) a personality disorder, and (4) a history of thyroid cancer.[4] (Tr. 12-13). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-14). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

---

[4] Also at step two, the ALJ indicated that the medical evidence shows claimant has been medically managed for history of thyroid condition, hypothyroidism, status post thyroidectomy, rule-out lupus, joint pain, vertigo, pituitary adenoma, hyperlipidemia, foot pain, status post appendectomy and cholecystectomy, fatigue, insomnia, sleep disturbance, dermatitis, and sinusitis. The ALJ determined that none of these conditions rise to the level of a severe impairment. (Tr. 13).

6

> The [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), because the [plaintiff] is able to lift and/or carry twenty pounds occasionally and ten pounds frequently. The [plaintiff] is limited to simple, routine tasks (which can be learned after a short demonstration or within thirty days) with no production rate or pace work. The [plaintiff] is occasionally able to interact with co-workers, and she is able to engage in no more than superficial interaction with the public. The [plaintiff] must avoid work that requires teamwork (such as on a production line), and she must engage in work that requires doing the same tasks every day with little variation in location, hours, or tasks.

(Tr. 16).

Proceeding to step four, the ALJ concluded, based upon the testimony of VE Cheairs, that plaintiff is unable to perform any past relevant work. (Tr. 19-20). Proceeding to step five, after considering testimony from VE Cheairs in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as housekeeper, photo copier operator, and mail room clerk. (Tr. 20-21). Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning of the Act from November 21, 2013 through the date of his decision. (Tr. 21).

IV. *Plaintiff's Challenges*

Plaintiff argues that the Appeals Council erred by not properly considering the new and material evidence submitted by plaintiff. Plaintiff further argues that remand is necessary because the Appeals Council failed to consider the new and material evidence. (*See* Dkt. No. 10-1 (Pl.'s Memo of Law)). After reviewing the ALJ's decision, the hearing transcript and the relevant evidence in the record, including the medical evidence that was submitted to the Appeals Council, the Court finds that the matter should be remanded for consideration of the medical opinions of Dr. Reichert. The medical opinions of Dr. Reichert were new, material, and relevant to determination of disability, therefore the

7

decision was not supported by substantial evidence. The Court finds that remand is warranted because plaintiff submitted new and material medical evidence which should have been considered by the Appeals Council.

*ALJ's Review of Medical Evidence*

The medical records before the ALJ reflect that plaintiff regularly received treatment for psychological disorders. Plaintiff received treatment from Andrew Reichert, M.D., a psychiatrist at Suburban Psychiatric Associates, LLP, beginning in 2005. (Tr. 154). Plaintiff was also treated regularly by Julie Makar, LCSW, a counselor at the same practice, as early as 2012. (Tr. 461). The record includes treatment and progress notes from visits with Dr. Reichert and Ms. Makar spanning from April 2012 to January 2017. (Tr. 368 - 463, 478-582).

On December 9, 2013, plaintiff was seen by Dr. Reichert for recent symptoms of a panic attack, heightened general anxiety, and thoughts of self-mutilation. (Tr. 368). Plaintiff was diagnosed with panic disorder with agoraphobia, generalized anxiety disorder, major depressive disorder, social phobia, ADHD, and personality disorder not otherwise specified. (Tr. 370). The treatment record generally shows variable symptoms and level of function throughout 2014, 2015, and 2016, including depressed mood, anxiety, agitation, anger, impaired memory, and inability to concentrate. In 2014, plaintiff's symptoms increased, with statements to Dr. Reichert that she "has become anxious to the point of throwing up," could not get out of bed for a week, had cut herself, and had persistent thoughts of cutting herself. (Tr. 478-482). Plaintiff told Dr. Reichert on two occasions in 2015 that her hormonal treatment for thyroid cancer was affecting her moods. (Tr. 497, 501).

Plaintiff testified that her ability to work is limited by ADHD, personality disorder, and panic disorder. (Tr. 16-17, 155-158). She stated that she is "spacey" due to the ADHD and has problems concentrating. (*Id.*). She also testified that she cycles between moods, is often irritable with difficulty interacting with others. (*Id.*). She stated she is either hyperactive or has difficulty getting out of bed. (*Id.*) She has frequent panic attacks (three to four times per week) and often feels anxious. (*Id.*) She stated she has difficulty with focus and following directions. (*Id.*).

In making his RFC determination, the ALJ relied on the treatment notes from Suburban Psychiatric Associates as well as the medical opinions of the consultative psychological examiner, Dr. Fabiano, and the reviewing psychiatric consultant, Dr. Kleinerman. (Tr. 17-19). The ALJ concluded that although plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, her statements about the intensity, persistence, and limiting effects of these symptoms were not fully consistent with the overall evidence on the record. (Tr. 17).

The ALJ noted that the progress notes of Dr. Reichert show that plaintiff generally responded well to outpatient counseling and psychotropic medication management with lithium, lamictal, and klonopin (Tr. 484, 495, 497, 502-503, 506, 510, 514, 518, 522, 526), as well as to thyroidectomy and subsequent treatment with radioactive iodine and thyroid replacement medication. (Tr. 493, 497).

One example noted by the ALJ referred to treatment notes from June 2014, when the claimant reported increased symptoms ("it's been extremely horrible"), but examination records showed plaintiff was calm and Dr. Reichert made the following mental status assessment: cooperative attitude; periodic displays of anxiety; affect

appropriate to mood, coherent and fluent speech; coherent thought processes; no delusions or hallucinations; intermittent self-injurious ideation; no dangerousness to self or others; alert and oriented; intact memory, attention span, and concentration; and fair judgment and insight. (Tr. 375-376). The ALJ also pointed to treatment notes showing plaintiff's Global Assessment of Functioning (GAF) scores ranging between 45 and 75, He afforded these scores reduced weight because of their fluctuating inconsistency and lack of supporting detail. (Tr. 19).

In formulating the RFC, the ALJ gave "reduced weight" to the various treatment note observations of Dr. Reichert which indicated that disability was "appropriate" for plaintiff and noted that she was "unable to maintain gainful employment." He discounted Dr. Reichert's notes because "these observations are not supported by an appropriate or detailed function-by-function assessment of the claimant's work-related abilities and because these observations are opinions on an issue reserved to the Commissioner." (Tr. 19).

Dr. Fabiano, the consultative psychological examiner, provided a medical source statement on October 21, 2014 that concluded plaintiff had only mild to moderate limitations in her functioning. (Tr. 469-473). He opined that plaintiff's ability to maintain attention and concentration, relate adequately to others, and appropriately deal with stress were mildly to moderately affected her psychological symptoms. (Tr. 472). He further concluded that plaintiff has no limitations in her ability to understand and follow simple instructions, perform simple and complex tasks independently, learn new tasks, maintain a regular schedule, and make appropriate decisions. (*Id.*).

Dr. Kleinerman, the reviewing psychiatric consultant, provided a medical opinion stating that plaintiff did not have a marked limitation in any functional category. (Tr. 474). He concluded that plaintiff is "deemed to retain capacities for understanding, remembering, and carrying out, at least, non-complex instructions and for relating appropriately under conditions of reduced interpersonal contact." (*Id.*). He found that plaintiff was not significantly limited in her ability to understand, remember, and carry out short and simple instructions, make simple work-related decisions, interact appropriately with supervisors and co-workers, adhere to basic workplace standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, and use public transportation. (Tr. 189-191).

In Dr. Kleinerman's assessment, plaintiff had moderate limitations in the following functional categories: understand, remember, and carry out detailed instructions; interact appropriately with the general public; maintain attention and concentration for extended periods; be punctual within customary tolerances; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; set realistic goals; and make plans independently of others. (*Id.*).

The ALJ gave significant weight to the opinions of Dr. Fabiano and Dr. Kleinerman "due to their expertise and the relative consistency of their opinions with each other and the overall evidence, including mental status examination findings and mental health treatment note observations." (Tr. 19).

11

There were no medical source statements from a treating physician, Dr. Reichert or otherwise, submitted as evidence prior to the ALJ's decision. It is noted that at the conclusion of the hearing, the ALJ held the record open for ten days for submission of additional treatment records from Ms. Makar covering the period of September 11, 2014 through July 18, 2016. (Tr. 161-163).

### Medical Evidence Submitted to the Appeals Council

Plaintiff submitted new medical evidence regarding her condition when she appealed ALJ Baird's denial to the Appeal Council. The additional evidence included various medical opinions of Dr. Reichert, specifically medical source statements dated September 22, 2015 through November 29, 2016 (Tr. 45-49), and a Medical Impairment Questionnaire dated August 21, 2017. (Tr. 39-44).

Medical records submitted to the Appeals Council reflect Dr. Reichert's opinion that plaintiff's mental impairments caused significant limitations to her ability to work and that her prognosis is "guarded." (Tr. 39-49). In his August 2017 function-by-function assessment, Dr. Reichert opined that plaintiff was unable to meet competitive standards for unskilled work in several categories, including maintaining attention for two-hour segments, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and dealing with normal work stress. (Tr. 41). He assessed that she had "marked" functional limitations in maintaining concentration, persistence, and pace. (Tr. 43). He also indicated that plaintiff had complete inability to function independently outside of her home based on her anxiety-related disorder. (*Id.*).

In medical assessments dated February 1, 2016 and November 29, 2016, Dr. Reichert was also of the opinion that plaintiff was "very limited" in her ability to maintain attention and concentration and function in a work setting at a consistent pace. (Tr. 46, 48). In a letter dated September 22, 2015, Dr. Reichert stated that he thought plaintiff was unable to work due to her "longstanding difficulties with severe anxiety and depression." (Tr. 49).

The Appeals Council did not consider the medical opinions of Dr. Reichert dated September 22, 2015 through November 29, 2016, and dated August 21, 2017. (Tr. 2). The Appeals Council found that this evidence "does not show a reasonable probability that it would change the outcome of the decision." (*Id.*).

### Plaintiff's New Medical Evidence Should Have Been Considered.

New evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Pursuant to the Social Security regulations, the Appeals Council must consider additional evidence after the ALJ's decision if it is new, material, and relates to the period on or before the date of the hearing decision, and there is reasonable probability that the additional evidence would change the outcome of the decision. *See* 20 C.F.R. § 404.970(a)(5); *Perez*, 77 F.3d. at 45. Additionally, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for

the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); see also Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).[5]

Further, "additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff." Wilbon v. Colvin, 2016 U.S. Dist. LEXIS 133492, 2016 WL 5402702 (W.D.N.Y. March 28, 2016); accord Brown v. Apfel, 174 F.3d 59, 64-65 (2d Cir. 1999) (considering evidence of symptoms that occurred six months after the ALJ's decision, but that related to a previously complained of condition). "Courts in this Circuit have consistently held that the Commissioner should consider new, material evidence that sheds light on the claimant's condition prior to the ALJ determination—even if the evidence post-dates that determination." Santiago-Jimenez v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 142040, at *8 (S.D.N.Y. Oct. 13, 2016) (citations omitted).

"New evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative.'" Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (quoting Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Commissioner to make a different decision on the application. See Lisa v. Sec. of HHS, 940 F.2d 40, 43 (2d Cir. 1991).

Here, the reports submitted to the Appeals Council relate to the appropriate time period. Dr. Reichert's statements were dated September 11, 2015, February 1, 2016, November 29, 2016 and August 21, 2017. All but the most recent opinion were rendered

---

[5] The Appeals Council did not base its determination on lack of good cause and the Commissioner does not argue lack of good cause here.

prior to the disability hearing and decision. The August 21, 2017 opinion post-dates the ALJ's decision, but it pertains to the medical conditions of plaintiff prior to that date. Dr. Reichert's latest opinion statement is relevant to benefits denial period as it lists the "earliest date of onset" for symptoms discussed as September 2005. (Tr. 44).

The issue of whether these additional records are probative and likely to affect the ALJ's consideration of the claim requires more detailed analysis. The reasonable probability prong is intertwined with the requirement that the additional evidence be new and non-cumulative in nature. The Commissioner argues that the additional evidence was rightfully declined by the Appeals Council because it was cumulative of medical records already in the administrative record, and therefore, not new. (Dkt. 14, Comm'r's Memo of Law). Further, the Commissioner asserts that the ALJ had already considered all of Dr. Reichert's underlying findings, thus the formalization of his treatment records into an opinion is unlikely to affect his decision. (*Id.*).

Formal and detailed medical opinions are not necessarily cumulative of a physician's treatment records and progress notes. See *Westhoven v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 60779, 2019 WL 1541053, at *3, 16-17 (W.D.N.Y. 2019) (determining that a comprehensive letter from treating physician which provided details and opinions on findings that were part of original record was "compelling" additional evidence justifying remand for further reconsideration); see also *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984) (finding that medical reports providing greater depth to appellant's personal history in relation to her alleged psychiatric problems were not cumulative of evidence already in the record).

This Court finds that the formal opinions of Dr. Reichert submitted after the ALJ's decision were not cumulative of the treatment notes already in the record. The treatment records contained only clinical notes about the physician's observations and did not provide the same detail or depth as a medical opinion. Such notes are distinctly different from formalized opinion evidence anticipated by 20 C.F.R. § 1527(a)(1).[6] Supporting this finding, is the ALJ's decision itself, which states that he gave reduced weight to the "various treatment note observations" of Dr. Reichert because they were "not supported by any appropriate or detailed function-by-function assessment of the [plaintiff's] work-related abilities..." (Tr. 19). The plaintiff subsequently submitted medical source statements with function-by-function assessments of precisely the sort the ALJ felt were missing from her treating physician's records. Surely, detailed medical opinions which the ALJ noted were lacking from the original record would have a reasonable possibility of affecting his decision.

In Lesterhuis v. Colvin, the Second Circuit determined that an ALJ's decision was not supported by substantial evidence because new evidence added to the record by the Appeals Council contradicted the ALJ's conclusion in important respects. See 805 F.3d 83, 88 (2d Cir. 2015). The Court explained that failure to consider the new evidence was error because the additional opinion of a treating physician was "(1) generally entitled to controlling weight, (2) likely dispositive on the issue of disability (if entitled to controlling weight), and (3) uncontroverted by other evidence in the record." See id. Here, the formal medical opinions demonstrate that plaintiff's treating physician assessed her mental

---

[6] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a)(1).

16

impairments to be significantly limiting in ways which are not reflected in the RFC determination. If given controlling weight, Dr. Reichert's opinion that plaintiff had significant functional limitations impairing her ability to work, including "marked" limitations in maintaining concentration, persistence, and pace, and inability to complete a normal workday and workweek without interruptions from psychologically based symptoms, would likely be dispositive on the issue of disability. Lastly, although the submissions of Dr. Fabiano and Dr. Kleinerman opined that plaintiff had only mild to moderate impairments in these specific functional areas, there is nothing in the record that specifically controverts the function-by-function assessment of Dr. Reichert. Thus, the additional records are material to the disability determination.

Because Dr. Reichert's medical opinions consist of new and material evidence relating to the period on or before the ALJ's decision, the Court finds that the Appeals Council erred by summarily rejecting and failing to consider this evidence. Indeed, the records met the standard for review pursuant to subpart (a) of 20 C.F.R. § 404.970.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: November 5, 2019
        Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge